IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| LARRY T. WEBB | § | |
| VS. | § | CIVIL ACTION NO.   5:21-CV-62 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner Larry T. Webb, a prisoner confined at the Gib Lewis Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The petition was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Factual Background

Petitioner is in custody pursuant to a judgment entered in the 5th Judicial District Court of Bowie County, Texas, in cause number 15F0870-005. On April 7, 2016, Petitioner was charged in a four-count indictment with two counts of aggravated sexual assault of a child younger than seventeen years of age and two counts of indecency with a child younger than seventeen. Dkt. No. 12-4 at 19-20. The State filed a notice of intention to seek a mandatory life sentence pursuant to Texas Penal Code § 12.42(c)(2), alleging that Petitioner had a prior conviction for sexual abuse of a child. Dkt. No. 12-4 at 26-27. A jury found Petitioner guilty of one count of aggravated sexual assault and one count of indecency of a child, and the jury found Petitioner not guilty of the remaining two counts of the indictment. Dkt. No. 12-4 at 58-61. Petitioner pleaded true to the enhancement alleging a prior conviction. Dkt. No. 12-7 at 216-21. On April 5, 2017, Petitioner

was sentenced to life imprisonment for each count, with the sentences ordered to run consecutively. Dkt. No. 12-4 at 65-68.

Petitioner appealed the judgment. On direct appeal, Petitioner argued that the trial court erred by allowing a witness to testify regarding her opinion that the victim told the truth when she reported the assault and by allowing Petitioner's own statements into evidence. Petitioner also argued that the evidence was insufficient to support the trial court's assessment of court costs against him. The Sixth Court of Appeals summarized the evidence as follows:

> Because the victim [referred to by the pseudonym "Susan"] had known Webb her entire life as her step-grandfather, whom she called "Pop," she and her sister enjoyed spending time with him. Because of their close relationship, they would sometimes spend the night with him at his house. After making arrangements with Susan's mother, Melissa, Susan spent the night of September 19, 2015, at Webb's house. Even though Susan's sister did not go, Susan, who had just turned fourteen years old, "wanted to still go to spend time with her grandfather for her birthday."
>
> Melissa testified that Susan called her that evening from Webb's house and asked if she could take some Tylenol, and Melissa told her she could. Susan testified that she told Webb that she was not feeling well. Because the bed she usually slept in was dirty and cluttered with things, Webb told her to lie down in his bed, an instruction she followed. Susan went on to relate that Webb entered the bedroom naked and got into the bed with her. She claimed that Webb touched and squeezed her breasts, put his hand inside her panties, inserted his finger in her vagina, and made her touch his penis with her hand. Webb removed her pants and "stuck his penis in [her]" vagina causing her pain. She testified that even though his actions caused her to cry and she yelled at him to cease, he did not stop until later. After Webb stopped, he exited the bedroom and went into the living room, where he fell asleep. Susan then grabbed the house wireless telephone, called her mother, and ran outside.
>
> Melissa testified that about an hour after the first telephone call, Susan called her again, from Webb's bedroom telephone, only this time she was "hysterical" and crying. She told Melissa that Webb had raped her. Susan ran out of the house and hid under a boat that was in Webb's yard. While she was under the boat, Webb came outside looking for her, and he said, "[Susan], where are you? I'm going to kill you and whoever you tell." Melissa told her, "Run, get as fast as you can to a neighbor's house." At some point, the call disconnected. Melissa dialed 9-1-1.

Susan ran to the house next door, the home of Jennifer McDonald. McDonald testified that she, her husband Larry, her two children, and one of their friends were in the house that night. She testified that it was about midnight when she heard "knocks on all the doors, all the windows." She and her family became afraid because it sounded to them as if someone was running around the house knocking. McDonald's husband opened the door and Susan "almost knocked [Larry] down trying to get into [the] house." McDonald did not know who Susan was, but she noticed that the child was holding a telephone, was wearing only a tee shirt and shorts, and was not wearing any shoes. Susan was screaming, crying, and saying, "He raped me. He raped me." When they asked her the identity of the person to whom she referred, Susan said that Webb had raped her and told her that if she told anyone, "he was going to kill her and whoever she told." McDonald described Susan as "absolutely hysterical." McDonald and her husband tried to calm Susan, and they called 9-1-1 for police assistance. It is a portion of McDonald's testimony that is the basis of one of Webb's complaints on appeal.

Randall Baggett, a deputy with the Bowie County Sheriff's Department, was the first to arrive at McDonald's house. He described Susan as "distraught, upset, looked like she'd been crying, looked like she was scared." She said that her grandfather, Webb, had raped her in his bedroom and related what she said had occurred to upset her. Between midnight and 1:00 a.m., other officers arrived at McDonald's house, and they went next door to speak with Webb. He invited the officers inside, and when asked if anyone else was in the house, he said his granddaughter was "in the back bedroom." Baggett testified that "someone had asked him you know, if he knew why we were there, and he said that his granddaughter could've possibly made a statement that he had did something sexual or he hit her or hurt her, something of that nature." Brent Caudle (a lieutenant with the Bowie County Sheriff's Department) said that he remembered Webb's answer to the question being, "Well, I guess it, you know, maybe I did something sexual or I assaulted my granddaughter."

Webb consented to a search of the house by the deputies, who collected the bedding from Webb's bed, the pajama bottoms that Webb was wearing, and a washcloth that was on the nightstand. The officers photographed Webb, the bed, bedding, bedroom, living area, bathroom, and other areas of the house. Baggett testified that Webb told the officers that they "may find something on that bedding as a couple of mornings earlier he woke up aroused." Baggett further testified that Webb seemed nervous when he was responding to questions that were posed to him and that "he'd come up with an answer for everything before we even asked him a question a lot of times ... as he had his story together before we were questioning." After a forensic examination, Webb's DNA was found on Susan's bra and panties, and semen was found on Webb's sheets.

> Melissa testified that by the time she arrived, the police were already there, Susan was very upset, and she "jumped in[to her] arms." They drove to St. Michael's Hospital in Texarkana, where a nurse wrote down Susan's statement of what happened and performed a sexual assault examination on Susan. Susan was later interviewed at the Children's Advocacy Center.

*Webb v. State*, 557 S.W.3d 690, 693-94 (Tex. App.–Texarkana 2018, pet. ref'd). The Court of Appeals overruled Petitioner's points of error and affirmed the judgment of the trial court. Petitioner filed a petition for discretionary review, which the Texas Court of Criminal Appeals refused on June 27, 2018.

Next, Petitioner filed a state application for habeas relief. On February 10, 2021, the Texas Court of Criminal Appeals denied the application without written order on the findings of the trial court without a hearing and on the court's independent review of the record. Dkt. No. 12-16 at 1.

## The Petition

Petitioner alleges trial counsel provided ineffective assistance by failing to: (1) challenge the validity of a probable cause affidavit and complaint and the indictment; (2) request a jury instruction on a lesser-included offense; (3) investigate and prepare for trial; and (4) hire an expert witness. Dkt. No. 1 at 11-13. Petitioner also contends that he received ineffective assistance of counsel on appeal because his appellate counsel failed to: (1) argue that there was insufficient evidence for the jury to find the aggravating factor of placing the victim in fear of death or serious bodily injury beyond a reasonable doubt; (2) appeal the trial court's denial of Petitioner's motion for a directed verdict; (3) raise an ineffective assistance of trial counsel claim on direct appeal; and (4) raise a claim of prosecutorial misconduct. *Id.* at 7-8.

Standard of Review

Title 28 U.S.C. § 2254 authorizes the district court to entertain a petition for writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner's custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The court may not grant relief on any claim that was adjudicated in state court proceedings unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[1]; or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, S., concurring). An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle but unreasonably applies that principle to the facts. *Id*. State court decisions must be given the benefit of the doubt. *Renico v. Lett*, 559 U.S. 766, 773 (2010).

The question for federal review is not whether the state court decision was incorrect, but whether it was unreasonable, which is a substantially higher threshold. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). If the decision of the highest state court is not accompanied by an explanation of the court's reasoning, federal courts must look to the last state court decision that

---

1 In making this determination, federal courts may consider only the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

does provide an explanation for the decision. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). There is a rebuttable presumption that the unexplained ruling adopted the same reasoning. *Id*. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011); *see also Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

This court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). The presumption of correctness applies to both implicit and explicit factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to the factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez*, 274 F.3d at 951 (holding that "a full and fair hearing is not a precondition to according § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review.").

## Analysis

I.  *Ineffective Assistance of Counsel*

Petitioner alleges that he was denied the effective assistance of counsel. To establish an ineffective assistance of counsel claim, Petitioner must prove counsel's performance was deficient and the deficient performance prejudiced Petitioner's defense. *Strickland v. Washington*, 466 U.S.

668, 687 (1984). Because Petitioner must prove both deficient performance and prejudice, failure to prove either will be fatal to his claim. *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995).

Judicial review of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. There is a strong presumption that counsel rendered reasonable, professional assistance and that the challenged conduct was the result of a reasoned strategy. *Id*. To overcome the presumption that counsel provided reasonably effective assistance, Petitioner must prove his attorney's performance was objectively unreasonable considering the facts of Petitioner's case, viewed at the time of the attorney's conduct. *Id*. at 689-90. A reasonable professional judgment to pursue a certain strategy should not be second-guessed. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

In addition to demonstrating that the counsel's performance was deficient, Petitioner must also show prejudice resulting from the counsel's inadequate performance. *Strickland*, 466 U.S. at 691-92. Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Petitioner must show a substantial likelihood that the result would have been different if counsel performed competently. *Richter*, 562 U.S. at 112. To determine whether Petitioner was prejudiced, the court must consider the totality of the evidence before the fact-finder. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010).

Analysis of an ineffective assistance claim on federal habeas review of a state court conviction is not the same as adjudicating the claim on direct review of a federal conviction. *Richter*, 562 U.S. at 101. The key question on habeas review is not whether counsel's performance fell below the *Strickland* standard, but whether the state court's application of *Strickland* was

7

unreasonable. *Id*. Even if Petitioner has a strong case for granting relief, that does not mean the state court was unreasonable in denying relief. *Id*. at 102.

    A. *Failing to Investigate and Challenge the Probable Cause Affidavit and Indictment*

Petitioner claims that his trial counsel provided ineffective assistance by failing to investigate and challenge the probable cause affidavit and complaint for an arrest warrant and the variance between that document and the indictment. Dkt. No. 1 at 11-13. The probable cause affidavit and complaint for arrest warrant, prepared by Captain Robby McCarver on November 20, 2015, alleged that Petitioner committed aggravated sexual assault of a child under fourteen years of age. Dkt. No. 12-4 at 15-18. On April 7, 2016, a grand jury subsequently indicted Petitioner on two counts of aggravated sexual assault of a child under the age of seventeen and two counts of indecency of a child younger than seventeen by sexual contact. *Id.* at 19-20. The indictment did not allege the victim's age as the aggravating factor. *Id.* Instead, the aggravating factor was an allegation that Petitioner "by acts or words threaten[ed] to cause, or place, Susan Hooks (a pseudonym) in fear that death would be imminently inflicted on Susan Hooks…" *Id.*

Essentially, Petitioner alleges that counsel provided ineffective assistance by failing to challenge the probable cause affidavit and complaint because it erroneously stated that the victim was under the age of fourteen, and failed to challenge the indictment because it charged the offense of aggravated assault of a child based on different facts. The sufficiency of the probable cause affidavit and complaint and the sufficiency of the indictment are matters of state law. The sufficiency of a state indictment is not a matter for federal habeas review unless the indictment is so defective that the convicting court lacks jurisdiction. *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993). In addition, the federal court need not address the issue if the state courts have held

8

that the indictment is sufficient under state law. *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994). By denying the state application for habeas relief, the Texas Court of Criminal Appeals "necessarily, though not expressly, held that the Texas courts have jurisdiction and that the indictment is sufficient for that purpose." *Id*. (quoting *Alexander v. McCotter*, 775 F.2d 595, 599 (5th Cir. 1985)). Federal courts will not review a state court's interpretation of its own state law in federal habeas proceedings. *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991). Nor do federal courts "sit as a super state supreme court in such a proceeding to review errors under state law." *Id.* (internal quotes omitted); *see also Moreno v. Estelle*, 717 F.2d 171,179 (5th Cir. 1983) ("It is not our function as a federal appellate court in a habeas proceeding to review a state's interpretation of its own law.").

Because the state courts implicitly found that the probable cause affidavit and complaint were not defective, Petitioner's claims concerning counsel's failure to investigate and challenge the probable cause affidavit and complaint and the indictment also failed. Counsel does not perform deficiently by failing to raise meritless arguments. *Guidry v. Lumpkin*, 2 F.4th 472, 491 (5th Cir. 2021) ("[C]ounsel cannot be ineffective for failing to raise a meritless claim."). Further, Petitioner has not demonstrated that he was prejudiced by counsel's failure to challenge the validity of the documents. As a result, the state court's rejection of these claims is a reasonable application of *Strickland*.

    B.  *Failure to Request Jury Instruction*

Petitioner was convicted of aggravated sexual assault of a child. The aggravating factor was an allegation that Petitioner placed the victim in fear of death. Dkt. No. 13-3 at 23. During the state habeas proceedings, the state court found that the testimony of the victim was sufficient

9

evidence to prove the aggravating factor. *Id.* Petitioner now contends, on collateral review, that trial counsel provided ineffective assistance by failing to request a jury instruction on the lesser-included offense of sexual assault, and appellate counsel provided ineffective assistance by failing to raise the issue on direct appeal. Dkt. No. 1 at 9.

Under Texas law, a lesser-included offense instruction must be given if (1) the lesser-included offense is within the proof necessary to establish the charged offense, and (2) there is some evidence in the record that, if the defendant is guilty, he is only guilty of the lesser offense. *Richards v. Quarterman*, 566 F.3d 553, 568 (5th Cir. 2009). Respondent does not dispute that sexual assault is a lesser-included offense of aggravated sexual assault. Instead, he focuses on the second prong of the test and contends that there is no evidence in the record that Petitioner was guilty only of sexual assault. At trial, Petitioner's defense was that he was innocent because the victim fabricated the allegations against Petitioner. *Webb*, 557 S.W.3d at 696. In accordance with this theory, defense counsel attacked the credibility of the victim by focusing on inconsistencies between the victim's testimony and the testimony of the State's other witnesses. *Id*. There was no evidence presented from which the jury could conclude that Petitioner was guilty of only sexual assault, and not aggravated assault.

By denying relief without written order during the state habeas proceedings, the Texas Court of Criminal Appeals implicitly found that counsel did not perform deficiently by failing to request a lesser-included offense instruction at trial or by failing to raise the issue on direct appeal, because such an instruction was not warranted by the evidence. The Court also implicitly found that the result of the proceeding would not have been different if counsel had requested the instruction or raised the issue on appeal. "A federal court may grant relief only if *every* 'fairminded

juris[t]' would agree that *every* reasonable lawyer would have made a different decision." *Dunn v. Reeves*, 141 S. Ct. 2405, 2411 (2021) (citing *Richter*, 562 U.S. at 101). Petitioner has not met this burden. Federal habeas relief is not warranted because the state court's application of *Strickland* was reasonable.[2]

### C. Failure to Investigate and Prepare for Trial

Petitioner alleges trial counsel performed deficiently by failing to investigate allegations that the victim previously made a false allegation of sexual assault against her father and by being unprepared to argue for the admission of such evidence during his cross-examination of the forensic interviewer, Melanie Halbrook. Dkt. No. 1 at 12. Before the start of the trial, the court granted the State's motion in limine, which prevented the parties from referring to extraneous acts of the victim, evidence of her character or reputation other than for truthfulness or untruthfulness, and any evidence of the victim's sexual conduct. Dkt. No. 12-4 at 8, 48-49; Dkt. No. 12-6 at 4. Petitioner claims that Ms. Halbrook testified that she would conduct separate interviews with a victim concerning separate incidents of abuse. During her interview with the victim, the victim allegedly made an outcry about a separate incident of sexual abuse involving a different individual, but Ms. Halbrook did not conduct a separate interview concerning the other incident. Petitioner alleges counsel should have used this alleged discrepancy to impeach the testimony of Ms.

---

[2] In addition to the deference due to the state court's implicit findings, federal habeas relief is not warranted because it was reasonable for trial counsel not to request a lesser-included offense instruction. Because Petitioner had a prior conviction for sexual abuse of a child, a new conviction for either sexual assault of a child or aggravated sexual assault would have resulted in an automatic sentence of life imprisonment. *See* Tex. Penal Code § 12.42(c)(2). It would have been a reasonable strategic decision for trial counsel to submit only the aggravated sexual assault charge to the jury and require the State to prove the aggravating element beyond a reasonable doubt. *See Dunn v. Reeves*, 594 U.S. ___, 141 S. Ct. 2405, 2410 (2021) (explaining that a federal court may not grant relief on an ineffective assistance of counsel claim unless counsel "took an approach that no competent lawyer would have chosen.").

Halbrook. In fact, the record reflects that Petitioner did attempt to introduce the evidence, and a hearing was held outside the presence of the jury. Dkt. No. 1 at 11-12; Dkt. No. 14 at 24. When the trial court repeatedly questioned the relevance and admissibility of the evidence, trial counsel agreed to waive his argument.

Petitioner has not shown that evidence of Ms. Halbrook's failure to conduct an interview regarding a second allegation of abuse would have impeached her credibility as a witness, or that the admission of such evidence would have affected the outcome of the trial. Rather, it appears that Petitioner believes trial counsel should have introduced evidence of extraneous acts, which were barred by the trial court's ruling on the motion in limine, through the testimony of Ms. Halbrook. Petitioner has failed to demonstrate that there was a different legal argument that trial counsel could have made that would have resulted in the admission of the evidence. Because Petitioner has not shown that counsel performed deficiently or that he was prejudiced by counsel's performance, the state court's application of *Strickland* was reasonable.

   D.  *Failure to Investigate Hire Expert Witness*

Petitioner contends trial counsel was ineffective for failing to investigate the medications taken by the victim, including Abilify, Zoloft, and Trazadone, and their potential side effects. Dkt. No. 1 at 13. Petitioner also contends trial counsel should have hired an expert witness to testify as to the medications and their potential side effects. *Id.*

An attorney is required to conduct a reasonable amount of pre-trial investigation. *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). However, the defense of a criminal case does not "contemplate the employment of wholly unlimited time and resources." *Smith v. Collins*, 977 F.2d 951, 960 (5th Cir. 1992). An attorney is not necessarily ineffective for failing to

12

investigate every conceivable, potentially non-frivolous matter. *Id.* Petitioner must allege "with specificity" the information that additional investigation would have revealed and demonstrate that it would have changed the outcome of the trial. *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010).

Petitioner has not demonstrated that counsel performed deficiently in his investigation of the case, his pre-trial preparation, or his failure to develop and present evidence regarding the medications provided to the victim. There is no indication from the record that additional investigation or preparation would have located evidence or witnesses that could be used to aid Petitioner's defense. "Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998). The state court's conclusion that counsel provided effective assistance with respect to pre-trial investigation, preparation, and development of a defense strategy is a reasonable application of *Strickland*.

Petitioner's claim that counsel should have hired an expert witness also lacks merit. Complaints about the failure to call witnesses are disfavored in habeas petitions because allegations of potential testimony are largely speculative, and the presentation of witnesses is generally a matter of trial strategy. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009); *Lockhart*, 782 F.2d at 1282. The petitioner must identify the witness, explain the content of the witness's proposed testimony, show the testimony would have been favorable to a particular defense, and demonstrate that the witness would have testified at trial. *Day*, 566 F.3d at 538. Generally, relief will not be granted where the only evidence of the potential witness's testimony comes from the petitioner. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001).

Petitioner's assertion that an expert witness would have testified favorably to the defense is speculative. In addition, Petitioner failed to identify any experts who would have testified on his behalf or to present evidence of the content of their expected testimony. Petitioner's speculative allegations are insufficient to overcome the strong presumption that counsel provided effective assistance of counsel.

### E. Ineffective Assistance of Counsel on Appeal

Petitioner contends that his appellate counsel also provided ineffective assistance of counsel. Dkt. No. 1 at 6. First, Petitioner argues that appellate counsel should have argued that there was insufficient evidence to support the jury's finding that Petitioner placed the victim in fear of death or serious bodily injury. *Id.* In a related ground for review, Petitioner claims counsel should have appealed the denial of Petitioner's motion for directed verdict because there was insufficient evidence to support the aggravating factor of placing the victim in fear of death or bodily injury. *Id.*

Relying on the affidavit of Petitioner's appellate counsel, the trial court made extensive findings concerning these issues during the state habeas proceedings. The trial court found, in part, the following:

> 7. Webb was convicted of aggravated sexual assault (of a child). The aggravating factor alleged in the indictment was that Webb placed the victim in fear of death. That factor was also included in the guilt-innocence charge.
>
> 8. The victim (S.H.) testified at trial as follows:
>
>> Q Did you hear him saying anything?

>    A   He said, 'Madison, where are you?   I'm going to kill you and whoever you tell.'
>    Q   Madison, did Larry Webb threaten to kill you that night?
>    A   Yes, Ma'am.
>    Q   Did that scare you?
>    A   Very much.

9.   This testimony is legally and factually sufficient evidence of the aggravating factor alleged by the state, included in the charge and found by the jury.  The victim was not an accomplice, as such her testimony need not be corroborated.  The victim's testimony of the threat from Applicant is sufficient evidence alone to establish the aggravating factor.

10.   The threat discussed was not during the sexual assault, but rather, the threat occurred after the sexual assault.  More specifically, just after the assault, the victim went outside of the house, and the exchange took place.

11.   Although Applicant contends that the threat must occur during the physical assault, he provided no legal support for his argument.

12.   Additionally, the penal code provision does not expressly state that the threat must occur during the sexual assault.

. . . .

15.   In the present case, the threat occurred after the sexual portion of the assault concluded, but while the victim was fleeing the assault.   As such, it is sufficient to support the jury's finding of the aggravating factor.

. . . .

19.   To the extent Applicant argues that the threat was not an immediate threat to the victim, it was a then present threat which was "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near."   As such, it qualifies as an "imminent" threat.

20.   The aggravating factor was established by legally and factually sufficient evidence, and therefore, the Court further finds the State proved beyond a reasonable doubt that Applicant committed the aggravated element charged in the Indictment.

21.   Appellate counsel's decision not to raise this issue on appeal was objectively reasonable.

22. Even if appellate counsel had raised this issue on appeal, Applicant would not have prevailed on appeal.

23. Appellate counsel was not ineffective for failing to raise a claim of legal insufficiency on direct appeal.

Dkt. No. 13-3 at 23-25 (internal citations omitted).

Counsel is not required to raise every nonfrivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Because the evidence was sufficient under state law to establish the aggravating factor beyond a reasonable doubt, appellate counsel did not perform deficiently by failing to argue on appeal that there was insufficient evidence to support the aggravating factor or that the trial court erred by denying Petitioner's motion for a directed verdict.

Next, Petitioner argues that appellate counsel should have raised a claim of prosecutorial misconduct on direct appeal. Dkt. No. 1 at 8. Petitioner claims Ms. Halbrook gave false and misleading testimony on cross-examination when she testified that the victim told her that Petitioner threatened her and that the victim's mother heard the threat through the telephone. *Id.* A criminal defendant is denied due process when the prosecutor knowingly presents perjured testimony at trial or fails to correct untrue testimony. *Giglio v. United States*, 405 U.S. 150, 153 (1972). To obtain habeas relief on such a claim, Petitioner must show that the testimony was false, the state knew it was false, and the testimony was material. *Creel v. Johnson*, 162 F.3d 385, 391 (5th Cir. 1998). In this case, a prosecutorial misconduct claim would have been frivolous because there is no evidence that the testimony was false or that the prosecutor knew the testimony was false. It was clear from her testimony that Ms. Halbrook had no first-hand knowledge of the incident. In response to defense counsel's questions, she simply repeated what she was told by the victim during an interview. Further, Petitioner has not demonstrated that, but for counsel's alleged

16

errors, Petitioner would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Thus, the state court's application of *Strickland* was reasonable.

### Recommendation

It is accordingly recommended that the above-styled application for the writ of habeas corpus be dismissed with prejudice.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

SIGNED this the 2nd day of February, 2024.

J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE

17